STATE OF MISSOURI at the Relation of RUDOLPH A. GOERTS, Relator,
v. JAMES A. WAECHTER, JOSEPH W. HANNAUER, STEPHEN M.
WAGNER and CHARLES L. MOORE, as Members Constituting the
Board of Election Commissioners of the City of St. Louis.—80
S. W. (2d) 672.

Court en Banc, February 26, 1935.

*Frank E. Atwood* and *Richard C. Hart* for relator.

*McDonald & Just* for respondents.

COLES, J.—This is an original proceeding in mandamus brought by Rudolph A. Goerts as relator seeking to compel the Board of Election Commissioners of the city of St. Louis to accept and file his declaration papers announcing himself as a candidate for the office of Alderman from the Fourteenth Ward of the city of St. Louis on the Republican ticket to be voted for only by the voters of said ward at the primary election to be held on March 8, 1935.

An alternative writ of mandamus was granted by this court and the respondents have filed their return to such writ.

No question arises upon the pleadings or facts and the matter is presented here in the briefs and arguments of counsel as a question of law. The relator contends that under the existing law he is entitled to file his declaration papers with the Board of Election Commissioners as a candidate for Alderman on the Republican ticket from the Fourteenth Ward "to be voted for only by the voters of said ward" at the primary election to be held on March 8, 1935. On the other hand, the respondents as the Board of Election Commissioners contend that under the existing law members of the Board of Aldermen can be nominated and elected only upon a general ticket from the city at large and not by wards and for that reason they were constrained to refuse to permit the relator to file his declaration papers with them.

The issue thus presented must be determined from a consideration of the pertinent provisions of our State Constitution and laws and the provisions of the existing charter of the city of St. Louis. The Constitution of 1875, in Section 20 of Article IX provides a scheme for the separation of the city of St. Louis from the county; provides for the enlargement and definition of the boundaries of the city; the organization of the government of the county; the adjustment of the relations between the city thus enlarged and the residue of the county and the government of the city thus enlarged. The section mentioned provided authority for the adoption by the city of a charter "in harmony with and subject to the Constitution and Laws of Missouri, which among other things shall provide for a chief executive and two houses of legislation, one of which shall be elected by general ticket." This section remains a part of the

Constitution so far as not modified by subsequent amendments to the Constitution.

Section 22 of the same article of the Constitution of 1875 makes provision for the amendment of a charter adopted pursuant to Section 20 as follows: "The charter so ratified may be amended at intervals of not less than two years, by proposals therefor submitted by the law-making authorities of the city to the qualified voters thereof at a general or special election, held at least sixty days after the publication of such proposals and accepted by at least three-fifths of the qualified voters thereat."

The last-mentioned section remained a part of the Constitution unmodified until the general election of 1902 (Laws 1901, p. 263; Laws 1905, p. 320) when it was repealed and the following section adopted in its stead:

"Section 22. Charter, how amended and revised. The charter so ratified may be amended by proposals therefor submitted by the lawmaking authorities of the city to the qualified voters thereof, at a general or special election held at least sixty days after the publication of such proposals and accepted by three-fifths of the qualified voters voting for or against each of said amendments so submitted, and the lawmaking authorities of such city may order an election by the qualified voters of the city of a board of thirteen freeholders of such city to prepare a new charter for such city, which said charter shall be in harmony with and subject to the Constitution and laws of the State, and shall provide, among other things, for a chief executive and at least one house of legislation to be elected by general ticket. Said revised charter shall be submitted to the qualified voters of such city at an election to be held not less than twenty nor more than thirty days after the order therefor, and if a majority of such qualified voters voting at such election ratify such charter, then said charter shall become the organic law of such city, and sixty days thereafter shall take effect and supersede the charter of such city and all special laws inconsistent therewith."

At the general election held in November, 1934, the foregoing Section 22 of the Constitution was amended so as to read as follows:

"The charter so ratified may be amended by proposals therefor submitted by the lawmaking authorities of the city to the qualified voters thereof, at a general or special election held at least sixty days after the publication of such proposals and accepted by three-fifths of the qualified voters voting for or against each of said amendments so submitted; and the lawmaking authorities of such city may order an election by the qualified voters of the city of a board of thirteen freeholders of such city to prepare a new charter for such city, which said charter shall be in harmony with and subject to the Constitution and laws of the State, and shall provide, among other things, for a chief executive and for house or houses of legis-

lation to be elected by general ticket or by wards. Said revised charter shall be submitted to the qualified voters of such city at an election to be held not less than twenty nor more than thirty days after the order therefor, and if a majority of such qualified voters voting at such election ratify such charter, then said charter shall become the organic law of such city, and sixty days thereafter shall take effect and supersede the charter of such city and all special laws inconsistent therewith." [Laws 1933, p. 476.]

In June, 1914, the city of St. Louis adopted a new charter, proposed by a Board of Freeholders, effective August 29, 1914. When the charter of 1914 was adopted the constitutional amendment of 1902, before mentioned, was in effect and that constitutional amendment provided that any "new" or "revised" charter prepared by a board of freeholders should provide for "at least one house of legislation to be elected by general ticket." The 1914 charter prepared by a board of freeholders provided for but one "house of legislation" called the Board of Aldermen and further provided that this body should be elected by general ticket. Under the constitutional provision then in force the board of freeholders had no authority to prepare and propose a charter providing for the election of the members of the board of aldermen by wards, for the Constitution expressly prohibited it. The charter of 1914 is still in effect and as adopted contained the following provisions:

"Every elective city officer, including the president and members of the board of aldermen, shall be elected by a general ticket; provided, that whenever the Constitution and laws of the State permit, each alderman shall be elected only by the voters of the ward from which he is elected." [Article II, Sec. 4.]

And

"The legislative power of the city shall, subject to the limitations of this charter, be vested in a board of aldermen, consisting of a president, elected as such by general ticket from the city at large, and twenty-eight members, one from each ward, to be known and elected by general ticket as alderman from the ward from which elected." [Article IV, Sec. 1.]

It must be observed that the provisions of the Constitution authorizing the city to adopt a charter deal with two phases of the general subject, namely: (1) the framing and adoption of the charter, and (2) the amendment or revision of it after it has been adopted. Under the constitutional amendment of 1902 two modes of amending the charter were provided for: FIRST, by the votes of three-fifths of the qualified voters of the city voting at a general or special election; and, SECOND, through the medium of a board of thirteen freeholders of the city chosen in the manner specified in the amendment, who when so chosen were authorized to "propose a new charter" for the city. The constitutional amendment of 1902 provided

that where a board of freeholders proposed a charter for the city pursuant to that amendment, such charter should, among other things, provide for "at least one house of legislation to be elected by general ticket," and that the proposed charter should be submitted to the qualified voters and ratified by a majority of the voters voting at such election before it could become effective.

The constitutional amendment of 1934 here relied on by relator is identical in text with the amendment of 1902, except that it provides that the "new charter" to be "prepared" by the board of freeholders, "shall provide, among other things, for house or houses of legislation to be elected by general ticket *or by wards.*"

The constitutional amendment of 1934 merely prescribes the methods by which a previously "ratified" charter may be amended. The provision of that amendment in reference to the election of members of "house or houses of legislation" by "general ticket or by wards" *is expressly related to instances where a "new" or "revised" charter is prepared by a board of freeholders* for submission to the qualified voters of the city for ratification or rejection. The constitutional amendment of 1934 grants no authority to the city of St. Louis to nominate and elect its aldermen by the votes of the voters of particular wards. It does grant authority to the lawmaking authorities of the city to submit amendments to the charter to the qualified voters of the city either directly or to provide for the election of a board of freeholders who when elected may submit to the voters a "new" or "revised" charter which may, among other things, provide for the election of members of the "house or houses of legislation" by "general ticket or by wards."

We are unable to find any provision of the Constitution or laws of the State of Missouri which now "permits" the nomination or election of the aldermen of St. Louis "only by the voters of the ward from which he is elected." The most that can be said is that the constitutional amendment of 1934 is probably broad enough in its terms to permit the present charter to be so amended by the vote of the qualified voters of St. Louis as to permit the members of the board of aldermen to be elected by wards. Under the express provisions of the constitutional amendment of 1934 an amendment to the charter provision for the nomination and election of the members of the board of aldermen must be effected either by a direct proposal submitted to the voters by "the lawmaking authorities of the city" or through the medium of a "new" or "revised charter" submitted to the electorate by a properly constituted board of freeholders. In the first instance the proposal must be "accepted" by three-fifths of the qualified voters voting at the election and in the second a majority vote will suffice.

The relator relies strongly on the provision of the present charter "that whenever the Constitution and laws of the State permit, each

alderman shall be elected only by the voters of the ward from which he is elected.'' He contends that this provision of the charter must be treated as a law to take effect upon the happening of a future event or contingency and that the contingent event has happened, in that the constitutional amendment of 1934 ''permits'' the nomination and election of aldermen by wards. This position we think is fallacious and untenable. We have already pointed out that the constitutional amendment of 1934 merely authorizes the amendment or revision of previously ''ratified'' charters through recourse to the electorate either directly or by submitting to the voters a ''new'' or ''revised'' charter prepared by a duly constituted board of freeholders. Even if we should accept as correct the contention of relator that in some instances a law may be passed to take effect thereafter ''whenever the Constitution and laws of the State permit'' and that such a law may become valid and operative whenever thereafter the Constitution and laws permit the enactment of such a law, the principle can find no application in this case. As we have already pointed out the Constitution and laws of the State of Missouri do not permit aldermen of the city of St. Louis to be elected by wards. Furthermore, we are of the opinion that the constitutional amendments of 1902 and 1934 require that the substantive provisions of any ''new'' city charter proposed by a board of freeholders named thereunder shall conform to the existing requirements of the Constitution and that any provision incorporated in the proposed ''new'' charter which is intended to become effective, without further recourse to the electorate, and only in the event of a future change in the Constitution would be a mere futility and without legal validity.

We hold that under the provisions of the existing charter of the city of St. Louis the members of the board of aldermen must be nominated and elected by general ticket from the city at large and not by the voters of particular wards. It results from these views that the alternative writ of mandamus issued herein must be quashed and the relator's petition dismissed. It is so ordered. All concur.